UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHATINA GRADY
DANIEL GRADY
    Plaintiffs,

v.

WASHTENAW COUNTY SHERIFF'S OFFICE
SGT. DEPUTY JOHN CRATSENBURG
DEPUTY AUSTIN PEARSON
DEPUTY DANIEL BUFFA
YPSILANTI POLICE DEPARTMENT
OFFICER BRYAN GERWIG
    Defendants.

Case No: 2:22-cv-11142

Hon. Judge_____

**COMPLAINT**
**DEMAND FOR JURY TRIAL**

Starr Law, PLLC
Trovious M. Starr P-79638
2500 Packard St, STE 106
Ann Arbor, MI 48104
(678) 491-8820
Attorney for Plaintiffs
starrlawpllc@gmail.com

## INTRODUCTION

1. This is an action for relief from violations committed by both the Washtenaw County Sheriff's Office and the Ypsilanti Police Department for the actions of their law enforcement officers. (Collectively, "Defendants") Defendants deprived Plaintiffs of their right to be free from unreasonable searches and seizures, and the right to be secure in their persons, houses papers, and effects, and the right to engage in protected speech conduct.

2. Defendants subjected Plaintiffs to brutal and unlawful violence by unlawfully and arbitrarily arresting Plaintiffs for filming Defendants in an area where Plaintiffs were away from, and not close to, Defendants.

3. Defendants instigated this unlawful arrest by yelling and cursing at Plaintiffs while Plaintiffs were quiet and away from the Defendants. Defendants were talking with individuals in a particular house when Defendants began berating Plaintiffs no legitimate reason.

4. Plaintiffs were unlawfully imprisoned at the Washtenaw County Jail by the Defendants, this being in addition to being beaten, tasered, and verbally harassed by Defendants.

5. Plaintiffs have suffered emotionally, physically, and financially as a result of Defendants unlawful actions.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over the subject matter and parties pursuant to 28 U.S.C § 1331, as this case involves questions of federal law and the United States Constitution. This Court also has jurisdiction pursuant to 28 U.S.C § 1343 because Plaintiffs seek to redress deprivations for the violations of their civil rights.

7. This Court has supplemental jurisdiction over the related state law claims pursuant to 28 U.S.C. § 1367(a) because those claims form part of the same case or controversy under Article III of the United States Constitution. Plaintiffs' state law claims share all common operative facts with their federal law claims, and the parties are identical. Resolving Plaintiff's federal and state claims in a single action serves the interests of judicial economy, convenience, consistency, and fairness to the parties.

8. Venue is proper in, and Defendants are subject to the personal jurisdiction of, this Court because Defendants maintains facilities and governmental operations in this District,

and all or most of the events giving rise to this action occurred in this District. 28 U.S.C. §1391(b); 42 U.S.C. § 2000e- (a).

## NATURE OF THIS ACTION

9. This is an action brought pursuant to Section I of the Civil Rights Act of 1871, 42 U.S.C § 1983, and Michigan statutory and common law.

10. Plaintiffs seek injunctive relief, compensatory damages, punitive damages, liquidated damages, unpaid wages and penalties, and their reasonable attorneys' fees and litigation expenses as remedies for Defendants' violations of Plaintiffs' Federal and Michigan statutory as well as common law rights.

## PARTIES

11. Plaintiffs Daniel and Shatina Grady are married as husband and wife.

12. Upon information and belief, Defendant Washtenaw County Sheriff's Office is a government agency with its headquarters located in Ann Arbor, Michigan.

13. Upon information and belief, all named Deputy Defendants were, at the time of the incident, employed as law enforcement officers by the Washtenaw County Sheriff's Office.

14. Upon information and belief, Defendant Ypsilanti Police Department is a government agency with its headquarters located in Ypsilanti, Michigan.

15. Upon information and belief, Defendant Officer Bryan Gerwig was a Police Officer with the Ypsilanti Police Department at the time of the incident.

16. Plaintiffs are informed and believes, and thereon alleges, that at all times relevant herein all Defendants were responsible in some manner for the occurrences and injuries

alleged in this Complaint. Plaintiff will amend this Complaint if more names or occurrences arise.

## STATEMENT OF FACTS

17. On May 26th, 2020, multiple Deputies from the Washtenaw County Sheriff's Office responded to the area of 2714 Peachcrest St. in Ypsilanti Township, Michigan for a report of shots fired.

18. Those Deputies, along with the named Defendant Deputies in this Complaint, arrived and then began canvassing the area to investigate. Defendant Pearson made contact with 2714 Peachcrest and spoke with someone inside through a closed window. Defendant Cratsenburg came across an individual who sustained a gunshot wound to the back.

19. Defendant Cratsenburg, along with other Deputies, began speaking with this individual about the events of the night that led to the call to law enforcement.

20. This individual then gave a description of the possible shooter after being asked "who shot you" by one of the Deputies.

21. This individual then conveys to the Deputies about the location of the shooter and said, "I don't know where he (sic) at, but he (sic) probably ran off."

22. The individual tells Deputies that she doesn't know the person who allegedly shot her, and she cannot describe the person who shot her except for that person being a black male, short, and wearing a blue shirt.

23. Defendant Pearson asked the individual if the shooter went in the blue house, however he asked this while the individual was in clear agonizing pain.

24. The individual blurted out yes when asked by Defendant Pearson.

25. Additionally, this individual told the named Defendant Deputies along with other Washtenaw County Sheriff Deputies, both during the initial encounter and afterwards, that she doesn't and did not know where the alleged shooter went after the shooting.

26. Moreover, other Deputies have noted that the individual's story about the events that night changed with the more questions they asked of the individual during the initial encounter. One Deputy noted this change in story in his police report.

27. The individual is then placed in an ambulance and then the Defendant Deputies gather and decided to talk to the occupants of 2714 Peachcrest.

28. One Deputy asked Defendant Cratsenburg if he wanted to close off the area of 2714 Peachcrest.

29. Defendant Cratsenburg responded no and stated that he only wanted to "make contact with" that house.

30. The Defendant Deputies, along with other law enforcement officers, then proceed to the Peachcrest house and begin talking to the apparent homeowner of that house.

31. The law enforcement officers never close off the area of 2714 Peachcrest, nor do they establish a clear boundary of the area.

32. While talking to the apparent owner of the house, Plaintiffs are at the house next door standing on the sidewalk, approximately 40 to 60 yards away from the Defendant Deputies.

33. Plaintiffs are completely quiet while standing at the house next door filming the encounter with the owner of the house and the Defendant Deputies.

34. One Defendant Deputy then sees Plaintiffs and then arbitrarily begins to yell at them, telling them to move away further.

35. Plaintiffs initially remain silent to the Deputies.

36. The Defendant Deputies then begin to curse at and yell louder at Plaintiffs.

37. Plaintiffs then respond by telling the Defendant Deputies that they are not bothering them while standing at the house next door.

38. The yelling and cursing by the Defendant Deputies continue.

39. One Defendant Deputy tells Plaintiffs to "shut up."

40. While this is going on, a Deputy is still able to talk with the apparent owner of the house.

41. This Deputy repeatedly asked the owner of the house for permission to enter and the owner repeatedly tells the Deputy no.

42. Eventually, the owner, after constant badgering by the deputy, allows the deputy to enter.

43. However, the Deputy refuses, the Deputy wants more than one Deputy to enter, which the owner will only allow one Deputy to enter the house.

44. The Deputy then resumes his repeated badgering again.

45. The Defendant Deputies and Plaintiffs are still talking to each other while contact with the house is still being had.

46. The Deputy then decided to end the badgering with the owner of the house.

47. The Defendant Deputies and Defendant Officer then decide to capriciously arrest Plaintiffs. One Defendant stated the "they needed to go."

48. The Defendant Deputies then travel across the street, encountering other individuals who were not on the property of 2714 Peachcrest but who were similarly situated as Plaintiffs, then back towards the Plaintiffs to arrest them.

49. Plaintiffs are trying to explain to the Defendant Deputies and Defendant Officer that they were not in their way and that they just wanted to film the encounter from the house next door.

50. Defendant Deputies and Defendant Officer then begin to physically harm Plaintiffs; Defendant Cratsenburg tasered Plaintiff Daniel Grady with his Sheriff issued taser gun; Defendant Pearson physically assaulted Plaintiff Shatina Grady and told her "good" in response to her saying "I can't breath"; Defendant Buffa physically harmed Plaintiffs and assisted in arresting Plaintiffs; and Defendant Gerwig assisted with arresting Plaintiffs.

51. All Defendants observed the unlaw arrests and took part in the unlawful arrest.

52. During the arrest, multiple individuals came extremely close to the Defendant Deputies and Defendant Officer.

53. Plaintiff Shatina Grady stated to Defendants that these individuals were much closer to the Defendants than her and her husband were, however, none of these individuals were arrested.

54. Moreover, the other individuals who were similarly situated as Plaintiffs were not arrested. Furthermore, Defendant Pearson allowed an individual to enter onto the lawn of 2714 Peachcrest and allowed that individual to go inside 2714 Peachcrest.

55. Both Plaintiffs suffered scratches, cuts, and bruises from the Defendants.

56. Both Plaintiffs were, and still are, emotional distraught over their brutal arrest.

57. Plaintiffs were then transported to the Washtenaw County Jail where they were kept there for several days.

58. Plaintiffs missed time from work because of their incarceration.

59. Once released from jail, Plaintiff have been afraid to go outside, work, and travel.

60. Law enforcement officers did search 2714 Peachcrest and located no shooting suspects.

61. One Deputy from the Washtenaw County Sheriff's Office even labeled the shooting as an accidental shooting in his police report.

62. Additionally, Defendants have either lied or grossly misrepresented the facts of this incident while testifying under oath.

63. Plaintiffs are now being maliciously prosecuted from this incident.

## COUNT I – VIOLATION OF 42 U.S.C. § 1983
*Retaliation for the Exercise of Plaintiffs' First Amendment Rights*

64. Plaintiffs incorporates by reference as if fully set forth herein the allegations contained in paragraphs 1 through 63, above.

65. Plaintiffs were engaged in filming an encounter between law enforcement and a homeowner from a distance away from law enforcement, which filming public law enforcement actions is a protected class of conduct.

66. An adverse action was taken against Plaintiffs by Defendants harassing, physically assaulting, and arbitrarily arresting Plaintiffs for filming Defendants. Furthermore, Defendants attempted to silence Plaintiffs during this protected conduct. These adverse actions would deter a person of ordinary fitness from engaging in that protected conduct.

67. The adverse actions taken by Defendants were motivated, at least in part, by Plaintiffs' engagement in that protected conduct.

68. The Defendants were acting as government law enforcement officers and employed as such during Plaintiffs' engagement of protected conduct.

## COUNT II – VIOLATION OF 42 U.S.C. § 1983

*Infringement of the Fourth Amendment*

69. Plaintiffs incorporates by reference as if fully set forth herein the allegations contained in paragraphs 1 through 68, above.

70. Defendants, while acting as government law enforcement officers and employed as such, did unreasonably and arbitrarily seized Plaintiffs.

71. Defendants held Plaintiffs in their custody for several days.

72. Plaintiffs, under the Fourth Amendment, had a right to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.

## COUNT III – FALSE IMPRISONMENT

73. Plaintiffs incorporates by reference as if fully set forth herein the allegations contained in paragraphs 1 through 72, above.

74. Defendants did restrain Plaintiffs' freedom of movement or personal liberty and did so unlawfully.

75. Defendants intentionally and unlawfully restrained, detained, or confined Plaintiffs and these actions resulted in Plaintiffs being deprived of their personal liberty or freedom of movement against their will.

76. This intentional and unlawful restraint was imposed by the Defendant using actual physical force or by an express or implied threat of force.

## COUNT IV – FALSE ARREST

77. Plaintiffs incorporates by reference as if fully set forth herein the allegations contained in paragraphs 1 through 76, above.

78. Defendants unlawfully took, seized, or detained Plaintiffs by either touching or putting hands on Plaintiffs or by any other act that indicated an intention to take Plaintiffs into Defendants' custody.

79. Plaintiffs were arrested to the actual control and will of the Defendants.

80. Defendants did not have probable cause to arrest Plaintiffs.

## COUNT V – ASSAULT AND BATTERY

81. Plaintiffs incorporates by reference as if fully set forth herein the allegations contained in paragraphs 1 through 80, above.

82. Defendants did intentionally and unlawfully threaten Plaintiffs by offering to place them under arrest.

83. This threat was directed towards the Plaintiffs and created a well-founded apprehension of immediate contact.

84. Defendants did willfully and harmfully or offensively touched Plaintiffs, which resulted from Defendants' intentional acts to cause such contact.

## COUNT VI – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

85. Plaintiffs incorporates by reference as if fully set forth herein the allegations contained in paragraphs 1 through 84, above.

86. Defendants did engage in extreme and outrageous conduct by unlawfully harassing, badgering, threatening, and physically harming Plaintiffs.

87. Defendants engaged in this behavior either recklessly or intentionally.

88. Plaintiffs have suffered severe emotional distress because of Defendants' actions towards them.

10

89.    Defendants were the primary cause for Plaintiffs' emotional distress.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs prays for relief as follows:

1.    For a declaration that Defendants' actions, policies, and practices as alleged herein are unlawful;

2.    For lost wages, penalties and all other compensation denied or lost to Plaintiff by reason of Defendants unlawful actions, in an amount to be proven at trial;

3.    For compensatory damages for Plaintiffs' emotional pain and suffering, in an amount to be proven at trial;

4.    For punitive damages in an amount to be determined at trial;

5.    For treble damages, in an amount to be proven at trial;

6.    For pain and suffering, in an amount to be proven at trial;

7.    For liquidated damages;

8.    For actual damages;

9.    For reputation damages;

10.    For confinement compensation;

11.    For interest on lost wages, compensation, and damages, including pre- and post-judgment interest and an upward adjustment for inflation;

12.    For Plaintiffs' reasonable attorneys' fees and costs of suit pursuant to 42 U.S.C § 2000e-5(k), 42 U.S.C. §1988, and other laws; and

13.    For such other and further relief as this Court deems just and proper.

DATED: May 19th, 2022

Respectfully submitted:

/s/___*Trovious Starr*

Attorney Trovious Starr (P79638)
Attorney for Plaintiffs
PO Box 130693
Ann Arbor, MI 48113
734-896-0304
starrlawpllc@gmail.com