UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


DANIEL GRADY and SHATINA
GRADY,

     Plaintiffs,                         Case No. 5:22-cv-11142
                                       District Judge Judith E. Levy
v.                                 Magistrate Judge Kimberly G. Altman

WASHTENAW COUNTY SHERIFF'S
OFFICE, YPSILANTI POLICE
DEPARTMENT, JOHN CRATSENBURG,
AUSTIN PEARSON, DANIEL BUFFA,
and BRYAN GERWIG,

     Defendants.
_____/


**REPORT AND RECOMMENDATION
TO GRANT IN PART AND DENY IN PART
PLAINTIFFS' MOTION
TO AMEND THE COMPLAINT (ECF No. 28)
AND
TO DENY AS MOOT
DEFENDANT WASHTENAW COUNTY SHERIFF'S OFFICE'S
MOTION TO DISMISS (ECF No. 4)[1]**

---

[1] Upon review of the parties' papers, the undersigned deems these matters appropriate for decision without oral argument.  *See* Fed. R. Civ. P. 78(b); E.D. Mich. LR 7.1(f)(2).

1

I.      Introduction

This is a civil rights case.  Plaintiffs Shatina Grady (Shatina) and Daniel

Grady (Daniel)[2] filed a complaint against the Washtenaw County Sheriff's Office

and the Ypsilanti Police Department as well as a number of law enforcement

officers—John Cratsenburg (Cratsenburg), Austin Pearson (Pearson), Daniel Buffa

(Buffa), and Bryan Gerwig (Gerwig)—alleging that they were unlawfully arrested

and imprisoned in jail after "filming an encounter between law enforcement and a

homeowner from a distance away from law enforcement[.]"  (ECF No. 1,

PageID.8; ECF No. 28-1, PageID.229).  Plaintiffs assert claims under state and

federal law.

Before the Court is the Washtenaw County Sheriff's Office's motion to

dismiss, (ECF No. 4), and Plaintiffs' motion for leave to amend the complaint,

(ECF No. 28).  Both motions were referred to the undersigned.  (ECF Nos. 7, 29).

For the reasons that follow, the undersigned RECOMMENDS that the

motion for leave to amend be GRANTED IN PART and DENIED IN PART.

Specifically, Plaintiffs should not be permitted to assert claims against the

Washtenaw County Sheriff's Office, nor any Fifth Amendment claims, because

they fail to state plausible claims for relief.  It is further RECOMMENDED that

---

[2] When referred to individually, Plaintiffs will be referred to by their first names
because they share the same last name.

the Washtenaw County Sheriff's Office's motion to dismiss be DENIED AS
MOOT.

## II.    Background

### A.    Relevant Procedural History

 In lieu of filing an answer to the complaint, the Washtenaw County
Sheriff's Office filed a motion to dismiss under Fed. R. Civ. P. 12(b)(6).[3]  (ECF
No. 7).  In response, Plaintiffs filed both an amended complaint, (ECF No. 17), and
a response, (ECF No. 18), in which they argued that the amended complaint stated
valid claims and also "met and exceeded the requirements of a well-pleaded
complaint."

Soon thereafter, the Washtenaw County Sheriff's Office—along with
Cratsenburg, Pearson, and Buffa—moved to strike both the amended complaint
and the response on the grounds that the filings were improper under the Federal
Rules and the response was untimely.  (ECF No. 19).  The Ypsilanti Police
Department and Gerwig filed a similar motion to strike.  (ECF No. 21).  The
motions were referred to the undersigned.  (ECF Nos. 20, 24).

Plaintiffs' response to the motion to strike was due on Wednesday, October
5, 2022; however, Plaintiffs failed to file a timely response.  *See* E.D. Mich. LR

---

[3] The Ypsilanti Police Department and Gerwig filed an answer to the complaint.
(ECF No. 15).

7.1(e)(1)(A).  On October 12, 2022, one week after Plaintiffs' response was due, the undersigned entered an order granting the unopposed motion to strike filed by the Washtenaw County Sherriff's Office, Cratsenburg, Pearson, and Buffa.  (ECF No. 24).

The order informed Plaintiffs that they could "file either a response to the motion to dismiss relying solely on the original complaint or a motion for leave to file an amended complaint **on or before Wednesday, November 2, 2022**."  (*Id.*, PageID.192) (emphasis in original).  Thereafter, the Ypsilanti Police Department and Gerwig moved to withdraw their motion to strike, (ECF No. 25), and the undersigned granted the motion to withdraw, (ECF No. 27).

On November 2, 2022, Plaintiffs filed a motion for leave to file an amended complaint, (ECF No. 28), to which the Washtenaw County Sheriff's Office, Buffa, Cratsenburg, and Pearson responded in opposition on November 16, 2022, (ECF No. 30).  The Ypsilanti Police Department and Gerwig did not file a response in opposition to Plaintiffs' motion for leave to amend.

### B.    Original Complaint

The following facts are gleaned from the original complaint.

The events giving rise to this lawsuit center on an interaction between a married couple, Shatina and Daniel, and Washtenaw County Sheriff's Office Deputies Cratsenburg, Pearson, and Buffa, as well as Ypsilanti Police Department

Officer Gerwig that occurred on May 26, 2020.  (ECF No. 1, PageID.3-4).  On that date, various Washtenaw County Sheriff's Office deputies, including Cratsenburg, Pearson, and Buffa, were dispatched to a home located on Peachcrest Street in Ypsilanti Township, Michigan.  (*Id*., PageID.4).

Upon arrival, Pearson spoke to someone inside of the home through a closed window.  (*Id*.).  Meanwhile, Cratsenburg encountered an individual who appeared to have "sustained a gunshot wound to the back."  (*Id*.).

Cratsenburg and the other deputies questioned the injured individual about the night's events.[4]  (*Id*.).  The injured individual provided a description of the person who shot her and also told the deputies, " 'I don't know where he (sic) at, but he (sic) probably ran off.' "  (*Id*.).  The injured individual described her assailant as "a black male, short, and wearing a blue shirt."  (*Id*.).  Pearson then asked the injured individual if the shooter went into the blue house.  (*Id*.).  The injured individual, who was "in clear agonizing pain[,]" responded "yes."  (*Id*.).  At that point, an ambulance arrived and removed the injured individual from the scene.  (*Id*., PageID.5).

An unnamed deputy asked Cratsenburg if he wanted to "close off the area," but Cratsenburg responded in the negative and explained that he first "wanted to

---

[4] The injured "individual's story about the events that night changed with the more questions they asked of the individual during the initial encounter.  One [d]eputy noted this change in story in his police report."  (ECF No. 1, PageID.5).

'make contact with' that house." (*Id*.).  Law enforcement officers including the

deputies then approached the Peachcrest house and began talking to the apparent

homeowner.  (*Id*.).

Plaintiffs were standing on the sidewalk in front of the house next door to

the house of interest to the deputies.  (*Id*.).  They estimated that they were standing

approximately 40 to 60 yards away from the deputies.  (*Id*.).  Plaintiffs were

observing the actions of the deputies as well as recording the deputies' encounter

with the apparent homeowner.  (*Id*.).

At some point, a deputy realized that Plaintiffs were standing nearby and

recording the encounter.  (*Id*.).  He yelled at Plaintiffs and instructed them to move

further away from the Peachcrest house.  (*Id*.).  Plaintiffs did not immediately

respond, and the deputies then began cursing and yelling louder.  (*Id*., PageID.6).

Plaintiffs responded that they were "not bothering" the deputies.  (*Id*.).  The

deputies, however, continued to yell and curse and one deputy told Plaintiffs to "

'shut up.' " (*Id*.).

During the interaction with Plaintiffs and various deputies, one deputy

continued his conversation with the apparent owner of the Peachcrest house.  (*Id*.).

"This [d]eputy repeatedly asked the [apparent] owner of the house for permission

to enter and the [apparent] owner repeatedly [told] the [d]eputy no." (*Id*.).

However, the apparent homeowner eventually acquiesced and informed the deputy

that he could enter the house by himself.  (*Id.*).  The deputy was unhappy with the apparent homeowner's condition and attempted to convince the apparent homeowner to allow more than one deputy to enter.  (*Id.*).

The various deputies and Gerwig then decided to arrest Plaintiffs.  (*Id.*). Plaintiffs attempted to explain that they were not interfering with the law enforcement officers, but the officers "beg[an] to physically harm Plaintiffs[.]" (*Id.*, PageID.7).  Cratsenburg tasered Daniel while Pearson physically assaulted Shatina despite her saying, " 'I can't breath[e].' "  (*Id.*).  Buffa also physically harmed Plaintiffs.  (*Id.*).  Both Buffa and Gerwig assisted in the arrest of Plaintiffs. (*Id.*).

"Both Plaintiffs suffered scratches, cuts, and bruises" as well as emotional distress.  (*Id.*).  Additionally, after their arrests, they were detained at the Washtenaw County Jail for several days causing them both to miss work.  (*Id.*).

### C.    Proposed Amended Complaint

Both the original complaint and the proposed amended complaint allege the same series of events summarized in the previous subsection.  The key changes from the original complaint to the proposed amended complaint involve the

language used to describe the Washtenaw County Sherriff's Office's role in this case.

The proposed amended complaint alleges that the Washtenaw County Sheriff's Office is liable for the actions of its sheriff deputies, in part, because "of its policies, practices, and customs, which led to this complaint of violation." (ECF No. 28-1, PageID.219).  The proposed amended complaint also clarifies that, pursuant to the policy of the Washtenaw County Sheriff's Office, Cratsenburg was the officer in charge at the time the alleged constitutional violations occurred.  (*Id*., PageID.226).  Plaintiffs also allege that the Washtenaw County Sheriff's Office has "a de facto policy of deliberate indifference to individuals such as Plaintiffs." (*Id*., PageID.230, 232-233).

### III.   Legal Standard

Amendments to pleadings before trial are governed by Federal Rule of Civil Procedure 15(a).  Under Rule 15(a)(2), "a party may amend its pleading only with the opposing party's written consent or the court's leave.  The court should freely give leave when justice so requires."  Fed. R. Civ. P. 15(a)(2).  "Because Rule 15(a)(2) directs courts to 'freely give leave when justice so requires,' the rule embodies a 'liberal amendment policy.' "  *Brown v. Chapman*, 814 F.3d 436, 442-443 (6th Cir. 2016) (quoting *Morse v. McWhorter*, 290 F.3d 795, 800 (6th Cir. 2002)).

8

"Despite this policy, denial may be appropriate when there is 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, *futility of amendment*, etc.' " *Brown*, 814 F.3d at 443 (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)) (emphasis added).  "A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss." *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000); *see also Reid v. Detroit*, No. 18-13681, 2019 WL 6310956, at *3 (E.D. Mich. Nov. 25, 2019) ("The dispositive question here is whether Plaintiffs' proposed Second Amended Complaint contains sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face.").

When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must "construe the complaint in the light most favorable to plaintiff and accept all allegations as true." *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (concluding that a plausible claim need not contain "detailed factual

9

allegations," but it must contain more than "labels and conclusions" or "a

formulaic recitation of the elements of a cause of action").  Facial plausibility is

established "when the plaintiff pleads factual content that allows the court to draw

the reasonable inference that the defendant is liable for the misconduct alleged."

*Iqbal*, 556 U.S. at 678.  "The plausibility of an inference depends on a host of

considerations, including common sense and the strength of competing

explanations for the defendant's conduct."  *16630 Southfield Ltd., P'Ship v.*

*Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013).

## IV.    Analysis

Plaintiffs assert seven claims in their proposed amended complaint:

retaliation in violation of the First Amendment (Count I); violations of the Fourth,

Fifth, and Fourteenth Amendments (II); violation of the Eight Amendment (III);

false imprisonment (IV); false arrest (V); assault and battery (VI); and intentional

infliction of emotional distress (VII).

The responding defendants—the Washtenaw County Sheriff's Office,

Cratsenburg, Pearson, and Buffa—argue that Plaintiffs' motion for leave to amend

should be denied because the proposed amendments are futile.  Specifically, the

Washtenaw County Sheriff's Office argues that Plaintiffs fail to allege any facts

suggesting that one of its policies or customs led to a constitutional violation and

that Plaintiffs also fail to show how their state law claims against it are not barred

by governmental immunity.  Similarly, Cratsenburg, Pearson, and Buffa argue that
Plaintiffs fail to sufficiently plead substantive due process, equal protection, and
Eight Amendment claims against them.

### A.     The Washtenaw County Sheriff's Office

Plaintiffs proposed amended complaint includes claims against the
Washtenaw County Sheriff's Office arising under both federal law (specifically 42
U.S.C. § 1983) and state law.  Each set of claims will be addressed in turn below.

### 1.     Federal Law Claims

### a.     Standard

"When a § 1983 claim is made against a municipality, the Court must
analyze two distinct issues: (1) whether Plaintiff's harm was caused by a
constitutional violation; and (2) if so, whether the municipality is responsible for
that violation." *Johnson v. Piper*, No. 4:21-CV-P89-JHM, 2021 WL 4944044, at
*2 (W.D. Ky. Oct. 22, 2021) (citing *Collins v. City of Harker Heights*, 503 U.S.
115, 120 (1992)).  "A municipality cannot be held responsible for a constitutional
deprivation unless there is a direct causal link between a municipal policy or
custom and the alleged constitutional deprivation." *Johnson*, at *2 (citing *Monell
v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)).

Ultimately, "a local government can be liable for: (1) an officially adopted
or promulgated policy, *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978);

(2) a custom or practice that is not formally adopted but is pervasive and long-standing, *id*.; (3) a failure to train, supervise, discipline, or adequately screen, *City of Canton v. Harris*, 489 U.S. 378, 387 (1989); or (4) a particular decision or act made by a final policymaker, *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988)." *Shepherd v. Metz*, No. 17-CV-11063, 2017 WL 11046664, at *5 (E.D. Mich. Aug. 2, 2017).

b.     Application

Plaintiffs' original complaint was devoid of any specific facts concerning the Washtenaw County Sheriff's Office.  For example, Plaintiffs did not allege that any harm they suffered was the result of a custom or policy implemented or endorsed by the Washtenaw County Sheriff's Office, nor did they name a specific policy or custom.  As such, the original complaint was deficient as to the Washtenaw County Sheriff's Office.  *See Bartley v. Kenton Cnty. Med. Staff*, No. 21-140-DLB, 2021 WL 5281592, at *2 (E.D. Ky. Nov. 12, 2021) ("Because a county government is only responsible under § 1983 when its employees cause injury by carrying out the county's formal policies or practices, *Monell v. Dept. of Social Services*, 436 U.S. 658, 694 (1978), a plaintiff must specify the county policy or custom which he alleges caused his injury."); *see also Vogle v. Goard*, No. 5:21-CV-P98-TBR, 2021 WL 5496858, at *2 (W.D. Ky. Nov. 23, 2021) ("Even reading the complaint liberally, the Court finds Plaintiff has not alleged a

12

Marshall County custom or policy of denying him his constitutional rights.");

*Strand v. Harville*, No. 2:21-CV-159-RLJ-CRW, 2021 WL 5500797, at *3 (E.D.

Tenn. Nov. 23, 2021) ("Here, Plaintiff has not suggested that his rights were

violated pursuant to a policy or regulation of Grainger County, and therefore, he

has failed to state a claim for municipal liability.").

Plaintiffs do little to cure these deficiencies in their proposed amended

complaint.  Plaintiffs' proposed amendments suggest that the Washtenaw County

Sheriff's Office is liable for three reasons: (1) it employed the deputies named as

defendants and that it is thus "liable for their acts," (ECF No. 28-1, PageID.219);

(2) Cratsenburg was the officer in charge of the scene who ordered Plaintiffs'

arrests and was thus a final policymaker of the Washtenaw County Sheriff's

Office, (*Id*., PageID.226-227); and (3) "Washtenaw County Sheriff's Department .

. . acting under color of state law, authorized, tolerated, ratified, permitted, or

acquiesced in the creation of policies, practices, and customs, establishing a de

facto policy of deliberate indifference to individuals such as Plaintiffs[,]" (*Id*.,

PageID.230, 232-233).  Each of these proffered theories of liability against the

Washtenaw County Sheriff's Office fail under the applicable law.

First, "under § 1983, local governments are responsible only for

'their *own* illegal acts.' "  *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (quoting

*Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986) (emphasis in original)).  "They

13

are not vicariously liable under § 1983 for their employees' actions." *Connick*, 563 U.S. at 60.  In other words, a municipality like the Washtenaw County Sheriff's Office "cannot be held liable *solely* because it employs a tortfeasor[,]" *Monell*, 98 U.S. at 691 (emphasis in original), nor because it "hired one 'bad apple[,]' " *Oklahoma City v. Tuttle*, 471 U.S. 808, 821 (1985).  Thus, Washtenaw County Sheriff's Office cannot be held liable for the alleged tortious acts of its deputies.

Second, while "it is plain that municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances[,]" this does not mean that "every decision by municipal officers automatically subjects the municipality to § 1983 liability." *Pembaur*, 475 U.S. at 480-481.  "Municipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered." *Id*. at 481.  Importantly, "[t]he fact that a particular official—even a policymaking official— has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion." *Id*. at 481-482.

"The Supreme Court has instructed that it is the 'court's task . . . to identify those officials or governmental bodies who speak with final policymaking authority' for the municipal entity whose action is alleged to have caused the constitutional violation at issue." *Spainhoward v. White Cnty.*, 421 F. Supp. 3d 524, 547 (M.D. Tenn. 2019) (quoting *McMillian v. Monroe Cnty.*, 520 U.S. 781,

14

784-785 (1997)).  While "it is true that final policymaking authority may be delegated . . . it is equally true that 'mere authority to exercise discretion while performing particular functions does not make a municipal employee a final policymaker unless the official's decisions are final and unreviewable and are not constrained by the official policies of superior officials.' "  *Miller v. Calhoun Cnty.*, 408 F.3d 803, 814 (6th Cir. 2005) (quoting *Feliciano v. Cleveland*, 988 F.2d 649, 655 (6th Cir. 1993)).

Here, even after construing the proposed amended complaint in the light most favorable to Plaintiffs, the undersigned finds no facts supporting Plaintiffs' position that Cratsenburg enjoyed final policymaking authority for the Washtenaw County Sheriff's Office.  The Washtenaw County Sheriff is unable to personally be at every crime scene in the entire county, and even if a deputy like Cratsenburg is "vested with authority to make limited decisions" while acting as an officer in charge, Plaintiffs "fail[ ] to explain how this differs from 'mere authority to exercise discretion.' "  *Miller*, 408 F.3d at 814 (quoting *Feliciano*, 988 F.2d at 655).  Ultimately, Plaintiffs do not plead facts in their proposed amended complaint that would plausibly support their theory of municipal liability premised on Cratsenburg as a policymaker.

Third, there is no specific theory of liability for a de facto policy of deliberate indifference; the closest type of claim is one based on a failure to train.

15

A failure-to-train claim is when "[a] municipality's culpability for a deprivation of rights is at its most tenuous" because "a municipality's failure to train its employees in a relevant respect must amount to 'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact.' " *Connick*, 563 U.S. at 61 (quoting *Canton v. Harris*, 489 U.S. 378, 388 (1989)).

"Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick*, 563 U.S. at 61 (quoting *Bd. of Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 410 (1997)) (cleaned up). "[W]hen city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program." *Connick*, 563 U.S. at 61. In order to demonstrate that a municipality was deliberately indifferent, a plaintiff ordinarily needs to allege "[a] pattern of similar constitutional violations by untrained employees." *Id*. at 62.

In the proposed amended complaint, Plaintiffs allege no instances of similar constitutional violations committed by deputies employed by the Washtenaw County Sheriff's Office. By failing to include this type of allegation, Plaintiffs have failed to adequately plead a failure-to-train claim against the Washtenaw County Sheriff's Office.

Therefore, because Plaintiffs' proposed amended complaint does not contain facts that support a plausible claim against the Washtenaw County Sheriff's Office, Plaintiffs' motion to amend should be denied so far as it attempts to state any claims against the Washtenaw County Sheriff's Office under § 1983.

2.      State Law Claims

a.      Standard

Under the Michigan Governmental Tort Liability Act (GTLA), "a governmental agency is immune from tort liability if the governmental agency is engaged in the exercise or discharge of a governmental function" except under certain limited circumstances.  M.C.L. § 691.1407(1); *see also Genesee Cnty. Drain Comm'r v. Genesee Cnty.*, 309 Mich. App. 317, 325-326, 869 N.W.2d 635 (2015) ("[T]he Michigan Legislature adopted a public policy, codified in the GTLA, that provides governmental entities with strong and comprehensive immunity from tort liability, subject only to extremely limited and strictly construed exceptions.").  The Michigan Court of Appeals has indicated that a county sheriff's office is a "governmental agency" under the GTLA.  *Niederhouse v. Palmerton*, 300 Mich. App. 625, 633-634, 836 N.W.2d 176 (2013) ("It is undisputed that an employment relationship existed between *the Roscommon County Sheriff's Department—a governmental agency—*and [the defendant].")

17

(emphasis added).

"To overcome governmental immunity for tort liability, then, plaintiffs . . . who bring tort claims against a governmental defendant must either (1) plead a tort that falls within one of the GTLA's stated exceptions, or (2) demonstrate that the alleged tort occurred outside the exercise or discharge of a governmental function." *Genesee Cnty. Drain Comm'r*, 309 Mich. App. at 327 (internal footnotes omitted).

> The GTLA does not contain an intentional tort exception to governmental immunity from tort liability. Accordingly, any plaintiff who seeks to assert an intentional tort claim against a governmental defendant must demonstrate that the defendant committed the alleged tort outside the exercise or discharge of a governmental function. This is a very high—and extremely difficult—burden for a plaintiff to surmount because, as noted, when courts assess whether a governmental defendant was engaged in the exercise or discharge of a governmental function, we look to the general activity involved rather than the specific conduct engaged in when the alleged injury occurred. Therefore, an act may be [the] exercise or discharge of a governmental function even though it results in an intentional tort. In other words, if a governmental agency commits an intentional tort during the exercise or discharge of a governmental function, the governmental agency is immune from tort liability. This limitation on tort liability allows the government to function without fear of time-consuming and costly litigation—a cost which, eventually, would be borne by the taxpaying citizens that fund the government.

*Id.* at 328-329 (internal quotation marks, citations, and footnotes omitted).

### b.    Application

Simply put, Plaintiffs have not met their very high and extremely difficult burden of showing that the Washtenaw County Sheriff's Office was engaged in anything other than the general activity of law enforcement when the allegedly

18

tortious acts occurred. *See Mack v. Detroit*, 467 Mich. 186, 204, 649 N.W.2d 47 (2002) ("It is well established in Michigan that the management, operation, and control of a police department is a governmental function."); *see also Wright v. Genesee Cnty. Corp.*, 659 F. Supp. 2d 842, 852 (E.D. Mich. 2009) ("It is well-settled that the operation of a law enforcement agency is a governmental function [under the GTLA]."). Therefore, Plaintiffs' intentional tort claims against the Washtenaw County Sheriff's Office should not be allowed to proceed.

### 3.    In Sum

Plaintiffs failed to state any plausible claims against the Washtenaw County Sheriff's Office in their original complaint and they likewise fail to do so in their proposed amended complaint. Accordingly, Plaintiffs' motion for leave to amend the complaint should be denied with regard to any claims they attempt to bring against the Washtenaw County Sheriff's Office because the proposed amendments are futile. Given this determination, the Washtenaw County Sheriff's Office motion to dismiss should be denied as moot.

### B.    Individual Sheriff Deputies

In addition to the claims against the Washtenaw County Sheriff's Office, the proposed amended complaint also includes a number of claims against individual deputies of that office (Cratsenburg, Pearson, and Buffa).

While the original complaint included claims against these deputies under §
1983 for violations of the First and Fourteenth Amendments as well as under state
law, the proposed amended complaint also includes claims for violations under the
Fifth and Eighth Amendments as well as additional claims under the Fourteenth
Amendment.  Cratsenburg, Pearson, and Buffa address the addition of these new
claims in their opposition to Plaintiffs' motion for leave to amend.

At this early stage of litigation, with the exception of a Fifth Amendment
claim discussed below, the undersigned does not recommend denying leave to
amend to add additional claims against Cratsenburg, Pearson, and Buffa,
particularly because the challenges to the new claims were first raised in the
context of a motion to amend.  *See Reid*, 2019 WL 6310956, at *5 ("While the
remaining individual Defendants may still believe that they are entitled to qualified
immunity (or dismissal on other grounds), because of the way these issues were
presented to the Court (in the context of a motion to amend), the Court concludes
those challenges would be better addressed in new motions to dismiss after the
Second Amended Complaint is filed."); *see also Valhalla Inv. Props., LLC v. 502,
LLC*, No. 3:19-cv-00318, 2020 WL 996918, at *1 (M.D. Tenn. Mar. 2, 2020)
("Because the defendants' futility arguments are better resolved in the context of a
dispositive motion, and for the reasons below, Valhalla's motion for leave to file a
second amended complaint will be granted.").

20

One of the proposed claims alleges a due process violation under both the Fifth and Fourteenth Amendments.  However, "the Fifth Amendment's Due Process Clause circumscribes only the actions of the federal government."  *Scott v. Clay Cnty.*, 205 F.3d 867, 873 n.8 (6th Cir. 2000).  None of the individual defendants are employed by the federal government.  Accordingly, the undersigned finds that Plaintiffs' "citation to the Fifth Amendment Due Process Clause was a nullity, and redundant of [their] invocation of the Fourteenth Amendment Due Process Clause."  *Id*.

As explained above, Plaintiffs' motion for leave to amend the complaint should be granted in regard to any revised facts and additional claims so far as they relate to Cratsenburg, Pearson, and Buffa.  The motion should be denied with respect to asserting a Fifth Amendment claim against them.

## V.     Conclusion

For the reasons stated above, the undersigned RECOMMENDS that Plaintiffs' motion for leave to amend the complaint, (ECF No. 28), be GRANTED IN PART and DENIED IN PART.

Additionally, if this recommendation is adopted, it is further RECOMMENDED that Plaintiffs be directed to file an amended complaint consistent with the above.  That is, the amended complaint shall not name the Washtenaw County Sheriff's Office as a defendant and shall not assert any Fifth

Amendment claim against Cratsenburg, Pearson, or Buffa.

Finally, the undersigned RECOMMENDS that the Washtenaw County

Sheriff's Office's motion to dismiss, (ECF No. 4), be DENIED AS MOOT.

Dated: December 13, 2022   s/Kimberly G. Altman
Detroit, Michigan      KIMBERLY G. ALTMAN
           United States Magistrate Judge

## NOTICE TO PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and

Recommendation. Any objections must be filed within 14 days of service, as

provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).

Failure to file specific objections constitutes a waiver of any further right of

appeal. *Thomas v. Arn*, 474 U.S. 140, 144 (1985); *Howard v. Sec'y of Health &*

*Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991). Filing objections that raise some

issues but fail to raise others with specificity will not preserve all the objections a

party might have to this Report and Recommendation. *Willis v. Sec'y of Health &*

*Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of*

*Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Under Local Rule

72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2,"

etc. Any objection must recite precisely the provision of this Report and

Recommendation to which it pertains. Not later than 14 days after service of an

objection, the opposing party may file a concise response proportionate to the

objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR

72.1(d).  The response must specifically address each issue raised in the objections,

in the same order, and labeled as "Response to Objection No. 1," "Response to

Objection No. 2," etc.  If the court determines that any objections are without

merit, it may rule without awaiting the response.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on December 13, 2022.

s/Carolyn Ciesla
CAROLYN CIESLA
Case Manager
